

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Jos. B. Dart
County Attorney
Kendall County
Boerne, Texas

Dear Sir:

Opinion No. O-3223
Re: Where a justice of the
peace fines a person for
contempt of court, does the
justice charge up costs as
in other cases tried be-
fore him? Is the county
attorney entitled to his
fee of $5.00 and 10% com-
mission on the fine?

Your request for an opinion of this department on
the above stated questions has been received.

We quote from your letter of February 26, 1941, as
follows:

"1st. Where a Justice of the Peace fines
a party for contempt of court does the Justice
charge up costs as in other cases tried before
him? And is the County Attorney entitled to
his fee of $5.00 and 10 per cent commission on
the fine?

"Art. 2386, R. C. S. authorizes the Justice
to fine any party for contempt of court.

"Art. C. C. P. 917, sets forth how the judg-
ment of a Justice of the Peace shall read: 'that
the State of Texas recover of the defendant the
fine and costs, etc.' And Art. 919 provides for
the issuance of an execution for the collection
of the fine and costs. Art. 950 C. C. P. pro-
vides that the County Attorney shall be entitled

to ten per cent of all fines, forfeitures or moneys collected for the State or any county, upon judgments recovered by him. Art. 1068 provides that the attorney representing the State shall receive a fee of $5.00 on a plea of guilty before a Justice Court.

"The offense of contempt of court cannot be looked on as anything but a criminal case, and it appears to me that the Justice should proceed as in any other criminal case and require payment of the costs."

On March 6, 1941, we wrote you requesting additional information relative to the questions stated above, and in compliance therewith, on April 5, 1941, you wrote, in part, as follows:

"This was case No. 1904, in Justice Court No. One Precinct, Kendall County.

"Oct. 26th, 1940, John Cohn was arrested in Kendall County for hunting without a license. The complaint was filed by Bill Garrett, Game Warden, and the case was docketed as No. 1876 on the Justice Docket of Precinct No. One. Thereafter a warrant was issued and sent to A. E. Hitzfelder, Game Warden in Bexar County. Mr. Hitzfelder served the warrant but did not take bond from Cohn or bring him to Boerne, in Justice Precinct No. One, but accepted Cohn's promise to appear before the Justice at once. Nothing more was heard of Mr. Cohn until some time in February, 1941, when Mr. Garrett requested an alias warrant. Mr. Hitzfelder made contact with Mr. Cohn and Mr. Cohn immediately came up to Boerne and plead guilty to the charge. In the course of the conversation Cohn was taken to task by the Justice, Hon. E. A. Dreiss, and Cohn endeavored to argue with the Court, on the question of Cohn's failure to keep his promise in the hunting without license case.

"The justice, not wishing to hear the

arguments, (this was an argument based on Cohn's contention that he had done all he should do in the premises) told Cohn that he hadn't shown much respect for the court when he failed to appear before and that that act coupled with his attempt to argue the question constituted contempt of court and he proceeded to fine him for contempt of court."

Article 2386, Vernon's Annotated Civil Statutes reads, in part, as follows:

"Justices of the peace shall also have power:

"1. To punish any party guilty of a contempt of court by fine not to exceed twenty-five dollars and by imprisonment not exceeding one day."

Contempts of court are classified as direct and as indirect or constructive, the test being whether the contempt was offered within or out of the presence of the court. This distinction is important from the procedural standpoint; direct contempts are punishable summarily, while constructive contempts require a different and less drastic process. (Ex parte Ratliff, 3 S. W. (2d) 406; Ex parte, Robertson, 11 S. W. 669).

A contempt committed in the presence of the court is denominated a direct contempt. A constructive contempt is said to be an act done, not in the presence or hearing of the court, but at a distance, an act which tends to belittle, to degrade, or obstruct, interrupt, prevent or embarrass the administration of justice. (Ex parte Vogler, 9 S. W. (2d) 733; Ex parte Duncan, 182 S. W. 313).

Under another classification, contempts are regarded as civil or criminal. Those proceedings instituted solely for the purpose of vindicating the dignity of the court are criminal.

From the facts stated in your letter it is apparent that the contempt was committed in the presence of the court, therefore, coming within the definition of a direct contempt. It further appears that the contempt proceeding was instituted solely for the purpose of vindicating the dignity of the court and would be classified as a criminal contempt also.

We quote from Texas Jurisprudence, Vol. 9, p. 618, Sec. 33, as follows:

"Contempt proceedings are commonly regarded as criminal in their nature even when arising in civil actions. It is said that even in remedial contempts of the mildest character there is the essential idea of contumacy, wilful disobedience of orders and decrees made in the administration of justice. The offense is against the administration of justice and against society, and hence it implies criminality. On this theory the proceedings should conform as nearly as possible to proceedings in criminal cases. * * *. But contempt proceedings are not criminal cases within all the rules and definitions of criminal law. They are said to be of a criminal nature because they are not properly civil suits, and because they involve the idea of the punishment of unauthorized acts. They are matters sui generis. Nor is a contempt of court an offense within the meaning of the penal code."

The case of Casey vs. State, 25 Tex. Rep. 381, among other things, holds in effect that a contempt of court is not an offense within the meaning of the Penal Code. Contempts are matters sui generis, and not criminal cases in the sense in which crimes are treated by writers upon criminal law. They are said to be of a criminal nature, because they are not properly civil suits, and because they involve the idea of the punishment of unauthorized acts.

We quote from the above mentioned case as follows:

"* * *. If a contempt, then, is not an offense within the meaning of the penal code, the laws which regulate it are not repealed by the code of criminal procedure. What, then, is an offense? As defined by the penal code, it 'is an act or omission forbidden by positive law, and to which is annexed, on conviction, any punishment prescribed in this code.' A contempt cannot come within this definition because no punishment is prescribed for it in the code. Besides this, a contempt is defined

to be 'a willful disregard or disobedience
of a public authority.' Bouv. L. Dic. 308.
The law of contempt does not come within the
purview of either of the codes. It rests
upon its own peculiarity, and while it can
not be said to be strictly within the range
of the civil law, it is equally distinct
from laws relating to crimes and punish-
ments. Yates v. Lansing, 9 Johns. 395."

The statutes are silent regarding the procedure upon
commitment for contempt, it is said that reference must be had
to the common law and such modifications as are found in the
precedent available. When one is adjudged to be in contempt,
the fact of controversy should be ascertained and determined,
and this adjudication should be entered in the minutes of the
court, and a writ of commitment issued thereon, for it has been
uniformly held that imprisonment for contempt will not be tol-
erated on a mere verbal order of the judge. (Tex. Jur., Vol.
9, p. 632; Ex parte McGraw, 277 S. W. 699; Ex parte Andrews,
100 S. W. 376.)

The ordinary form of judgment is that the party be
committed to jail until the fine and costs are paid. (Ex parte
Robertson, 11 S. W. 669). However, Article 2386, supra, the
statute under which the proceeding was brought does not author-
ize the taxing of costs in such proceedings, nor no other stat-
ute that we have been able to find authorizes the taxing of
costs when the proceeding is under Article 2386. Therefore,
we answer your first question in the negative.

As above stated, a contempt of court is not an offense
within the meaning of the Penal Code, and the statutes of the
Code of Criminal Procedure cited in your letter, providing for
commissions, fees for the attorney representing the State, etc.
are not applicable, because they provide compensation for certain
services rendered in cases involving offenses within the meaning
of the Penal Code. Therefore, your second question is respect-
fully answered in the negative.

Trusting that the foregoing fully answers your inquiry,
we are

Yours very truly

APPROVED APR 12, 1941

ATTORNEY GENERAL OF TEXAS

ATTORNEY GENERAL OF TEXAS

By

Ardell Williams
Assistant

AW:RS